FILED
APR 11 2022

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 1:14-CR-10042-CBK |
| Plaintiff, | |
| vs. | |
| JESSE JAMES HARWOOD, | **MEMORANDUM AND ORDER** |
| Defendant. | |

## I.   BACKGROUND

In the early hours of September 8, 2014, Jesse Howard ("defendant") stabbed his 21-year-old brother Dallas Farmer to death over music. While listening to music and drinking alcohol outside his house in Agency Village, South Dakota with his family and girlfriend, an argument broke out concerning what to play on the stereo. Intoxicated, the defendant turned off the stereo twice and proceeded to become aggressive and angry. This led to Harwood throwing knives form the kitchen towards the group as he remained inside the house. Acting as a peacemaker, Harwood's brother Dallas went into the house, seeing if he could diffuse the situation. Minutes later, Harwood came outside bleeding from the head. Upset over the defendant's outburst that evening, Ms. Ojeda ended the relationship then and there. Harwood walked away. But during this back-and-forth, nobody saw or heard from Dallas.

Ms. Ojeda went inside the house, finding Dallas lying on the living room floor saturated with his own blood from a stabbing wound inflicted by the defendant. Dallas was losing consciousness with every minute. Grabbing Aaron Farmer, who was sleeping in a back bedroom, Ojeda tried to revive Dallas as Aaron called 911. Tragically, their efforts were fruitless. But where was Harwood?

The defendant was on a walk while his brother laid dying because of his stabbing attack. He ultimately returned to the house while his (now ex-)girlfriend Ojeda tried to revive his own brother. Instead of rendering first aid or trying to ameliorate the situation, or simply do anything, Mr. Harwood retreated into his bedroom. This is where law enforcement ultimately found him, mere feet from where his brother passed away.

This was not even the first time that this Court has sentenced the defendant for stabbing a family member. In 2011 Harwood stabbed his uncle Stacy Farmer two times in the back with a serrated steak knife. When another individual, Samuel Farmer, tried to break up the fight, defendant bit Samuel's finger, and proceeded to throw two knives at another, David Farmer. Harwood stabbed his brother Dallas to death while on Supervised Release for the 2011 offense.

Mr. Harwood pled guilty to Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 113(a)(3), 1153. The defendant's guideline range for killing his brother was 57–71 months. After considering all relevant constitutional and statutory factors, including those listed under 18 U.S.C. 3553, this Court upwardly departed and sentenced Mr. Harwood to the statutory maximum of 120 months, followed by three years of supervised release. While acknowledging Harwood has a serious seizure disorder, the Court noted that his condition had no bearing on the killing of his brother, in a nearly identical series of circumstances that led to his first stabbing conviction from which he was still on supervised release. In both instances Harwood was heavily intoxicated when he stabbed his relatives. Tragically, in this offense the stabbing led to the loss of a young father.

On February 23, 2022, Mr. Harwood motioned this Court for compassionate release pursuant to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), and to be released to Sisseton, South Dakota. Doc. 44. While checking the requisite boxes for consideration because of (1) a terminal illness; (2) a serious medical condition; and (3) other extraordinary and compelling reasons, this Memorandum and Order explains why only assertions based on a serious medical condition are properly presented before this Court.

2

Defendant is currently housed in FCI Beaumont, in Texas. Sentenced by this Court in May 2015 to 120 months, Harwood's release date is scheduled for March 13, 2023. This motion would release the defendant almost a year earlier than originally scheduled. Because Harwood's brief assertions for release because of his seizure disorder are unavailing on its own, his motion should be denied.

## II. DISCUSSION

### A. Legal Standard

The Sentencing Reform Act of 1984, Pub. L. 98-473, Title II, § 212, authorized, *inter alia*, the district court, upon motion of the Director of the BOP, to reduce a prison term after considering the factors set forth in 18 U.S.C. § 3553(a), "if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The United States Sentencing Commission was established by the Sentencing Reform Act, codified at 18 U.S.C. § 3582(c)(1)(A). Effective November 1, 2006, the Sentencing Commission adopted Guideline §1B1.13, the policy statement on reduction of a term of imprisonment pursuant to § 3582(c)(1)(A). These provisions are known as the compassionate release provisions of the federal criminal code and the Federal Sentencing Guidelines.

On December 21, 2018, the First Step Act of 2018 was enacted. Pub. L. 115-391. The First Step Act amended, *inter alia*, § 3582(c)(1)(A) to increase the use and transparency of the compassionate release process. The Act added district court authority to grant compassionate release upon motion of a defendant after the exhaustion of administrative remedies. Frustratingly, though, the Federal Sentencing Guidelines have not been amended since passage of the First Step Act in 2018.[1] This Court proceeds in

---

[1] The Commission lost its quorum in January 2019, stopping any progress in the Commission's work these past three years. See Guerrant v. United States, — U.S. —, 142 S. Ct. 640, 641 (2022) (statement of Sotomayor, J., joined by Barrett, J.) ("At this point, the Sentencing Commission has not had a quorum for three full years. As the instant petition illustrates, the resultant unresolved divisions among the Courts of Appeals (concerning differing interpretations of sentencing guidelines) can have direct and severe consequences for defendants' sentences."). See also United States v. Rodd, 966 F.3d 740, 746 n.7 (8th Cir. 2020) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future.") (alteration in original) (*quoting* United

3

three steps: (1) assessing whether Campbell has exhausted his administrative remedies; (2) determining whether defendant has demonstrated that there are extraordinary and compelling circumstances warranting early release; and (3) if he has demonstrated such circumstances, whether the 18 U.S.C. § 3553(a) factors weigh in favor of early release. United States v. Marcussen, 15 F.4th 855, 858 (8th Cir. 2021) (*citing* 18 U.S.C. § 3582(c)(1)(A)(i)).

### B. Jurisdiction

Since sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, an exception exists where a court "may reduce the term of imprisonment" when "extraordinary and compelling reasons" exist under 18 U.S.C. § 3553(a) and that the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); United States v. Taylor, — F.—, 2022 WL 815289, at *1 (8th Cir. 2022) (*per curiam*). The defendant carries the burden to show a sentence reduction is warranted under 18 U.S.C. § 3582(c). United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### C. Exhaustion

This Court can only grant a sentence reduction upon motion of the defendant "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). See United States v. Houck, 2 F.4th 1082, 1083–84 (8th Cir. 2021). Here, Mr. Harwood requested a Reduction in Sentence ("RIS") from the Warden at FCI Beaumont on April 8, 2021, based on his seizure-related medical issues and assertions of improper care inside the facility. Doc. 46 at 1094. On April 20, 2021

---

States v. Beck, 425 F.Supp.3d 573, 579 n.7 (M.D.N.C. 2019)). The Court hopes the other branches of the federal government will soon resolve this long lapse in a quorum, inhibiting the Commission from pursuing much-needed work.

4

Warden J. Bartlett denied defendant's RIS. Id. at 1093. Accordingly, this matter is now ripe for adjudication.

### D. Compassionate Release

Compassionate release offers defendants with "extraordinary and compelling reasons" the opportunity to leave prison prior to the conclusion of their sentence. 18 U.S.C. § 3582(c)(1)(A)(i). However, § 3582(c)(1)(A)(i) does not define what "extraordinary and compelling reasons" may be; rather, that was left to the Commission. And as this Court has noted, the Commission has failed to offer such explanations to date. Prior to the First Step Act, though, the Commission established four categories for district courts to consider when reducing a defendant's term of imprisonment. Pursuant to U.S.S.G. §1B1.13, Application Note 1, these four examples of extraordinary and compelling reasons for compassionate release are:

(A) Medical Condition of the Defendant. —
    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
    (ii) The defendant is—
        (I) suffering from a serious physical or medical condition,
        (II) suffering from a serious functional or cognitive impairment, or
        (III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
(B) Age of the Defendant. — The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
(C) Family Circumstances.
    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons. — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The United States Court of Appeals for the Eighth Circuit has not yet decided whether the district court is bound by the Sentencing Commission's policy statement when considering a compassionate release motion under the First Step Act amendment to § 3582(c)(1)(A). "While some courts adhere to the pre-First Step Act policy statements, other courts have ruled that the pre-First Step Act policy statements are inapplicable, and that a judge has discretion to determine, at least until the Sentencing Commission acts, what qualifies as extraordinary and compelling reasons." United States v. Rodd, 966 F.3d 740, 745 (8th Cir. 2020) (cleaned up). To date the Eighth Circuit has not yet addressed whether district courts are bound to the pre-First Step Act applicable policy statements. See United States v. Crandall, 24 F.4th 582, 584 (8th Cir. 2022).

Chief Judge Lange has held that the "discretion given to the Director of the BOP in §1B1.13 comment note 1(D) also allows federal judges to consider 'extraordinary and compelling reason[s] other than' those specifically described." United States v. Dillabaugh, 2020 WL 3402392, at *3 (D.S.D. June 19, 2020). See also United States v. Aruda, 993 F.3d 797, 801–02 (9th Cir. 2021) (*per curiam*) (same); United States v. Brooker, 976 F.3d 228, 237–38 (2nd Cir. 2020) (same); United States v. McCoy, 981 F.3d 271, 281–82 (4th Cir. 2020) (same); United States v. Jones, 980 F.3d 1098, 1110–11 (6th Cir. 2020) (same); United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (same); United States v. Contreras, 504 F. Supp. 3d 1052, 1057–58 (D.S.D. 2020) (same). In other words, district courts are not limited by §1B1.13 as drafted by the pre-First Step Act Sentencing Commission. Utilizing this broader understanding also comports with the purpose of the Act, which "was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons *without being restricted* to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act." United States v. Campbell, 2022 WL

137977, at *3 (D.S.D. Jan. 14, 2022) (emphasis in original) (*quoting* United States v. Shangreaux, 2021 WL 1611500, at *3 (D.S.D. April 26, 2021)).

Defendant briefly argues that he warrants early release because of his medical history, specifically his seizure disorder that has on a prior occasion led to severe burns alongside his arms and neck while incarcerated. Mr. Harwood wrongly checked the box on his motion for compassionate release for being diagnosed with terminal illness; there is no evidence in the record that his serious seizure disorder is terminal. See doc. 44 at 4. Rather, it is a serious challenge that is being monitored and medicated while incarcerated. Accordingly, he is correct in noting that he does have a "serious physical or medical condition" because of his ongoing seizures, from which he is not "expected to recover." Id. Third, defendant checked the box for "other extraordinary and compelling reasons," but fails to provide any substance. Rather, he provides a laundry list of allegations against personnel for purportedly treating him unfairly, not taking his medical condition seriously, being slammed onto the ground while experiencing a seizure, among other matters. See docs. 44-1 at 1, 46 at 1094. But this motion is not the proper vehicle for Harwood to raise these specific claims of purported malpractice. And he makes the case himself. See doc. 46 at 1094 ("I am working on getting civil suit for malpractice"). These specific claims concerning medical treatment should be resolved in a future civil suit, not as "other extraordinary and compelling reasons" for release. Thus, the Court only addresses the remaining barebones assertion that defendant ought to be released because of his seizure disorder.

Mr. Harwood repeatedly notes his serious seizure disorder in his filings for compassionate release. However, he fails to go further and explain how the disorder "substantially diminishes" his ability to "provide self-care within" FCI Beaumont. U.S.S.G. §1b1.13, APPLICATION NOTE 1(A)(ii). True, he asserts specific incidents of alleged improper medical care, but Harwood does not venture further in explaining the needed addendum on *how* FCI Beaumont impedes his ability to provide self-care under a medical regime that ensures he receives his medication and *how* his treatment would be different in Sisseton. Finally, these specific instances of alleged neglect and

maltreatment that are raised may be properly addressed in the civil suit he contends is being prepared. Consequently, the defendant has not met his burden. The Court nevertheless proceeds to analyze whether the factors listed in 18 U.S.C. § 3553(a) weigh in favor of granting compassionate release.

### E. <u>18 U.S.C. § 3553(a) Factors</u>

I have considered all the § 3553(a) factors, just as I did during Mr. Harwood's original 2015 sentencing. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, need for the sentence imposed, kinds of sentences available, pertinent policy statements, need to avoid unwarranted sentence disparities, and need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)–(7). This review is not to be a "mechanical recitation of the § 3553(a) factors," but rather district courts must conduct a thorough consideration of all relevant factors, weighing and analyzing them as required in the individualized matter at hand. <u>United States v. Salazar-Aleman</u>, 741 F.3d 878, 881 (8th Cir. 2013) (*quoting* <u>United States v. Feemster</u>, 572 F.3d 455, 461 (8th Cir. 2009)).

#### 1. *Nature and Circumstances of the Offense*

Mr. Harwood stabbed and killed his brother when the victim sought to calm and stop the defendant from throwing more knives at family when on a drunken tirade. There was no provocation and no semblance of a case for self-defense presented before this Court. Rather, Harwood killed his brother who was acting as a mediator trying to diffuse the situation. The defendant never sought to render first aid or call for help. Instead, his former girlfriend, Fancy Ojeda, found Dallas lying on the living room floor saturated with blood. Ms. Ojeda tried to revive Dallas while waiting for law enforcement, while Aaron Farmer called 911. Law enforcement ultimately found the defendant in his bedroom as his brother took his final breaths. It is an understatement to call this needless act of violence heinous. It is likewise clear that this factor leans against an early release for Mr. Harwood. For similar reasons the Court finds a continued need to reflect the seriousness of the loss of life that Harwood took. See <u>United States v. Vandebrake</u>, 771

F. Supp. 2d 961, 999–1000 (N.D. Iowa 2011) (collapsing the nature and circumstances of the offense and need for appropriate sentence prongs together in a single analysis).

### 2. *History and Characteristics of Defendant Harwood*

Harwood has twice now been convicted of stabbing a relative with a knife. This act of familial violence occurred while the defendant was already on supervised released for *stabbing a family member*. Harwood's uncle, Stacy Farmer, was stabbed twice in the back by the defendant in 2011, when the defendant's preliminary breath test ("PBT") registered .15%. In this instant offense, Harwood's PBT registered at .2%.

Defendant also holds other criminal convictions from South Dakota and from Sisseton-Wahpeton Tribal Court. Mr. Harwood has served jail sentences in tribal court on nine separate occasions, with suspended sentences on one other tribal conviction and four instances in South Dakota State court.

Mr. Harwood did successfully graduate from Sisseton High School, which is lauded. Because of his serious seizure disorder, the defendant does not have an employment record. No doubt, defendant's ongoing seizures poses a great challenge to his daily life. The Court properly takes into consideration the defendant's personal history and characteristics.

### 3. *Remaining § 3553(a) Factors*

Considering the remaining § 3553(a) factors, including the need to afford adequate deterrence, promote respect for the law, provide just punishment, deter criminal conduct and protect from further crimes of the defendant, among others, all factors lean against early release. To afford adequate deterrence for such repeated misconduct against family members, as well as to promote respect for the law, § 3553(a) demands that this Court turn away from an early release. This original sentence provides just punishment in this matter, while deterring further criminal conduct and protecting the public – specifically, his family – from further crimes. Accordingly, the defendant's motion should be denied.

### III. CONCLUSION

Dallas Farmer's son will never know his father because of Jesse Harwood's fratricide. Dallas needlessly died while trying to calm down his brother who was on

9

another drunken spiral, an outburst sparked by a stereo. After stabbing his own brother, who simply tried to calm Harwood down, the defendant did nothing to help his own kin. Instead of offering medical aid, or calling 911, or yelling out for help, or anything, he ultimately retreated to his bedroom. This defendant has a history of stabbing family while drunk. Harwood killed his brother while on supervised release from this Court for stabbing his own uncle twice in the back.

Failing to provide any evidence of rehabilitation while incarcerated, Harwood's motion rests solely on grounds of insufficient medical care. Having previously explained why specific instances of purported negligent and willful mistreatment are not appropriate in this motion, the Court has carefully explained that while Harwood has a serious medical condition, he fails to provide sufficient justification for alternative medical treatment elsewhere in Sisseton. Like with a compassionate release motion decided by another district court, Hardwood "has reportedly suffered seizures" for many years, "but that condition clearly did not deter his criminal conduct." United States v. Wood, 2021 WL 742869, at *3 (E.D. Tenn. Feb. 25, 2021). Nor is it on its own sufficient grounds for compassionate release.

Defendant Harwood's release date is less than a year away. For the reasons laid out here, he should not receive even a day reprieve from his original sentence of 120 months. His seizure disorder is serious, but on its own measured with the scarce rationale offered in his motion, do not justify early release.

IT IS HEREBY ORDERED that defendant Jesse Harwood's motion for compassionate release, Doc. 44, is denied.

DATED this 5th day of April, 2022

BY THE COURT:

*Charles B. Kornmann*
CHARLES B. KORNMANN
United States District Judge

10